## Hartenstine's Estate

*Victor J. Roberts*, of *High, Swartz, Flynn & Roberts*, for petitioner.

HOLLAND, P. J., May 29, 1945.—In the codicil decedent directed that the share given in the will to his

daughter be paid to petitioner, as trustee, to "be invested at no less than six (6) percent interest in first mortgage real estate. . . ." The executors' account has been duly audited and confirmed, and the schedule of distribution directed by the adjudication has been filed and approved. Before accepting distribution, which has been tendered by the executors, the trustee filed this petition.

The trustee avers that since decedent executed the codicil on July 10, 1929, circumstances not anticipated by him but now prevailing, render it impossible to comply with the above-quoted terms of the trust. The court is asked to authorize the trustee to deviate from the terms of the trust and to invest the corpus in investments legal for trust funds under the statute. Decedent's daughter, the sole life beneficiary, joins in the prayer of the petition. So, also, do her four living children, who are all sui juris, and who are the remaindermen. Appointment of a trustee ad litem for possible unborn or unascertained persons is requested.

Evidence of the current impossibility of investing trust funds in six percent first mortgages is unnecessary. Knowledge of that fact is so common that judicial notice of it will be taken. However, the impossibility is not complete, or necessarily permanent. First mortgages are scarce, yet they still do exist. It is only the six percent interest requirement rate that cannot be met under the prevailing money market. First mortgage money is abundant at five percent, and is to be had at four percent, possibly even at less. Those rates have fluctuated in the past and despite the changes of recent years there is no present assurance that six percent first mortgages may not again become a possibility.

Thus the impossibility now confronting the trustee is only partial, and may, for all anyone now can say, be only temporary. It would be going unnecessarily far for a court to rewrite decedent's directions in the

extent requested. Just because the closest compliance now possible would be to invest in five percent or even four percent mortgages instead of the stipulated six percent does not seem sufficient reason for opening the door as far as the trustee asks. Were that done, the trustee would need to do no more than invest the entire fund in governments yielding a scant two percent and think no further until the trust terminates.

A decree on the merits, in order to restrict the relief granted to the limits of the emergency, could go no further than to authorize investment in first mortgages bearing less than six percent interest, and only so long as six percent mortgages remain unavailable. Conditional decrees are generally undesirable. The indefiniteness of the term of the authority thus granted would be unsatisfactory yet unavoidable.

Petitioner relies on the A. L. I. Restatement, Trusts §167, as authority for court-approved deviation from a term of a trust when necessitated by unanticipated circumstances. The annotations cite Hess's Estate, 22 Dist. R. 1028 (1913). There the will directed trustees not to sell stock for less than enough to yield $4,000 annually at four percent, just a more circuitous way of saying "for [not] less than $100,000". The best offer the trustees were able to obtain was $50,000, and sale of the stock was authorized at that price. It does seem that while only slight, there is a distinction between an outright sale of a trust asset for only 50 percent of the upset price fixed in the will, and authorizing in advance departure from an investment policy thus fixed. In the former both life beneficiaries and remaindermen are involved. Here, only the life beneficiary is concerned. She, in fact, by her joinder in the petition, has evidenced her assent. That of itself would appear sufficient protection for the trustee to go below the stipulated interest rate without risk of surcharge, quite aside from the impossibility to comply.

Also in point is §165 of the Restatement. Indeed it is closer to the facts here than §167. Section 165 relieves a trustee of the duty to comply or even to attempt to comply with an impossible requirement. Comment (c) covers temporary impossibility, and excuses the trustee as long as the impossibility continues. The duty to comply is reinstated "after the temporary impossibility is removed unless there has been such a change of circumstances as to justify or require a deviation from the terms of the trust under the rules stated in §167".

Substantively, then, the impossibility would be a defense for the trustee in any attempt to surcharge it as long as it continues, even without the consent of the sole life beneficiary. Procedurally, the trustee's position appears sufficiently secure without present action. From the latter aspect this petition is most doubtful.

Section 165 of the Restatement, comment (i), rules that "If the trustee is in doubt whether performance is possible, he may apply to the proper court for instructions". A similar provision in §167 is more emphatic, requiring court permission before deviating. The Pennsylvania annotations call attention to the applicability of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840 [12 PS §831 and ff.]. The Restatement, of course, does not purport to lay down methods of procedure by which court permission shall be obtained when properly authorized. Given the machinery provided by the Uniform Declaratory Judgments Act, no reason appears for not proceeding thereunder. A petition similar to that now before the court was filed under that act in Carwithen's Estate, 327 Pa. 490 (1937).

For obvious reasons our courts have been reluctant to give advisory opinions unless a real controversy exists or is sure to develop. With a little encouragement fiduciaries would be likely to shift most of their responsibilities to the courts. Even if this petition were

founded upon the Uniform Declaratory Judgments Act, it would be far outside the scope of relief according to the authorities reviewed in Carwithen's Estate, supra. The beneficiary's affirmative acquiescence to investments yielding less than six percent renders any controversy from that side not only remote, but removes it as a possibility. Complaints which the remaindermen might have when the trust terminates cannot arise from a lesser interest rate, but only from acts or omissions of the future. Against such claims, the trustee is plainly entitled to no advance protection under any theory.

And now, May 29, 1945, for the reasons stated in the foregoing opinion, the petition is dismissed; costs to be paid out of the estate.